SAVOIE, Judge,
dissenting.
From the majority opinion reversing the decision of the Civil Service Commission, and reinstating the plaintiff employee, I dissent. The plaintiff appealed from the Commission’s decision to terminate him, urging the following assignments of error:
1. The Civil Service Commission’s failure to address plaintiff’s request for summary disposition of defendant’s appeal from the Referee’s decision.
2. The Civil Service Commission’s finding that there was sufficient cause to terminate plaintiff based on implied impairment.
3. The Civil Service Commission’s failure to find that the termination letter sent to plaintiff did not express sufficient cause.
4. The Civil Service Commission’s failure to review the transcript of plaintiff’s criminal trial to discern testimony adverse to that of defendant’s witnesses presented at the hearing before the Referee.
5. The Civil Service Commission’s failure to reinstate plaintiff to a promoted position.
6. The Civil Service Commission’s failure to address plaintiff’s appeals from the Referee’s decisions.
7. The Civil Service Commission’s failure to address plaintiff’s “request for actions to be taken by the Civil Service Commission in accordance with La. Const, art. 10, § 10(a)(4).”
8. The Civil Service Commission’s termination of plaintiff as a penalty disproportionate to plaintiff’s alleged offense.
ASSIGNMENTS OF ERROR NOS. 1 and 3
Plaintiff initially contends that because defendant failed to follow a procedural rule of the Civil Service Commission when appealing the Referee’s decision, its appeal should have been disposed of summarily under Civil Service Rule 13.14a(3). Plaintiff contends that defendant did not follow Rule 13.36(b)6, which reads as follows:
“13.36 Application for Review of a Referee’s Decision.
(b) To be effective, an application for review of a referee’s decision must:
6. Contain a certificate that a copy of the application for review has been sent to the opposing party.”
I find that the Commission did not err in refusing to grant plaintiff’s request for summary disposition on this basis. While the letter requesting review of the Referee’s decision does not contain a Rule 13.-36(b)6 certificate, the brief attached to the letter does contain a certificate which says that a copy of the letter requesting review and brief were sent to the plaintiff’s attorney. I further note that the letter refers to an attached brief and that the letter and certificate are both dated July 24, 1987.
*1249 Plaintiff also contends that the July 23,' 1986 notice of a termination hearing on July 25, 1986 given to plaintiff did not give plaintiff sufficient notice of the disciplinary action because the letter does not set forth how the plaintiffs alleged conduct impaired the operation of the Levee Board. I find plaintiff’s contention to be without merit.
Rule 12.3 of the Civil Service Commission’s rules sets forth the requirements for notice of termination to an employee:
12.3 Procedure in Removals, Demotions and Reductions in Pay of Permanent Employees.
(a) In every case of removal, demotion, or reduction in pay for cause of a permanent employee, the appointing authority or his authorized agent shall:
1. Furnish to the employee at the time such action is taken, or prior thereto, a statement in writing giving detailed reasons for such action.
[[Image here]]
(c) For purposes of this Rule, ‘detailed reasons’ shall include at least a description of the misconduct for which the disciplinary action is being levied, the date, time and place of such misconduct, the names of persons directly involved in or directly affected by the misconduct (unless their identities are protected by state or federal statute or regulation, in which case, identification shall be made as permitted by such statute or regulation) and such other information as will fully inform the employee of the charge against him and will enable him to prepare a defense.
The purpose of Civil Service Commission Rule 12.3 is “to apprise the employee in detail of the charges and to limit any subsequent proceedings to the stated reasons.” University of New Orleans v. Pepitune, 460 So.2d 1191, 1193 (La.App. 1st Cir.1984), writ denied, 464 So.2d 315 (La.1985). After examining the letter of July 23,1986 (which set forth the seven reasons given in the July 25 letter) in light of the Civil Service rules and the jurisprudence, I find that the notice to plaintiff was sufficient.
ASSIGNMENT OF ERROR NO. 4
At the hearing before the Referee, the plaintiff and defendant stipulated that William C. Golden (a deputy sheriff working in the narcotics division) and Perry Sweet would testify to the facts exactly as they were set forth in plaintiff’s termination letter of July 25, 1986, and that these men had personal knowledge of these facts. Additional evidence supporting the allegations in defendant’s letter was the testimony of Joe Morris, a narcotics investigator with the Caddo Parish Sheriff’s office who was involved in surveillance of the October 26 and November 30 transactions. The plaintiff offered no evidence to deny the allegations set forth in the termination letter.
The Referee’s factual findings were in part based on the stipulations entered into at the hearing. The Referee made the following finding of fact:
4. The parties stipulated that both William C. Golden, an investigator with the Caddo Parish Sheriff’s Department, and Perry Sweet had personal knowledge of and would testify that on October 26, 1984, around 5:45 p.m. appellant met with Perry Sweet, who was acting as a confidential informant for the Caddo Parish Sheriff’s Department, at the New Dam Park area on Caddo Lake and sold Sweet marijuana for $75.00; that on November 2, 1984, around 6:10 p.m., at Rt. 1, Box 244, Belcher, Louisiana, appellant sold Agent Melvin Ashley, who was working with the Caddo Parish Sheriff’s Department, marijuana for $100.00; and that on November 30, 1984, around 4:45 p.m., appellant met with Sweet at the Gulf Station located on Highway 1 at Louisiana Highway 538 and sold Sweet marijuana.
Plaintiff contends that the Referee erred in failing to review the transcript of plaintiff’s criminal trial in order to read testimony adverse to defendant’s witnesses. Plaintiff’s contention can best be explained by quoting the language from his brief:
The Appellant contends that Referee Erschler, at the December, 1986 hearing, *1250 failed to address adverse testimony which was provided by the Appellant to be reviewed, and that the referee simply took as unrebutted, the testimony of the witnesses of the Caddo Parish Levee Board. It is our contention that the stipulation, if it was presented on the record as it was supposed to be, (and as was told to attorney for Mr. Caldwell that it was on the ^record), was that the testimony of the Levee Board witnesses would be the same as it was in a criminal trial, and said testimony was entirely discounted by the jury at the criminal trial. Therefore the only remaining count to which Mr. Caldwell was charged, is not applicable in this instance, as the Levee Board did not put on any testimony to substantiate that allegation.
I initially note that the stipulation was not that the testimony of witnesses Golden and Sweet would be the same as it was in the criminal trial; the stipulation, which was discussed extensively on the record, was that the two witnesses would testify to the allegations set forth in the termination letter exactly as they were given in the letter, and that they had personal knowledge of the facts. The Referee clearly understood the stipulation, as is evidenced by his factual findings.
Based on the stipulation and the testimony of Morris, there was unrebutted testimony before the Referee that plaintiff had engaged in drug transactions.[1] Defendant met its burden of proving plaintiffs conduct and it was plaintiffs burden to overcome that proof. See Howard v. Housing Authority of New Orleans, 457 So.2d 834, 843 (La.App. 1st Cir.1984). Plaintiff failed to do so. Plaintiff never introduced or attempted to introduce the record of the criminal trial into evidence. The Referee could not make a factual finding based on evidence not in the record. Nor was the Referee bound by the jury’s factual findings in the criminal trial, an entirely different matter.[2]
For these reasons, plaintiffs assignment of error has no merit.
ASSIGNMENT OF ERROR NO. 2
In order to dismiss a permanent classified employee such as plaintiff, there must be cause. La. Const, art. 10, § 8(A). According to our jurisprudence, cause is conduct which impairs the efficiency of the public service being rendered and which bears a real and substantial relationship to the efficient operation of that service. See McIntosh v. Monroe Municipal Fire & Police Civil Service Board, 389 So.2d 410 (La.App.2d Cir.1980), writ denied, 395 So.2d 1363 (La.1981). The burden of proof is upon the appointing authority (defendant) who “must demonstrate, by a preponderance of the evidence, that the conduct did in fact impair the efficiency and orderly operation of the public service.” Newman v. Department of Fire, 425 So.2d 753, 754 (La.1983).
Plaintiff contends that because defendant did not prove that any of the conduct he engaged in occurred on defendant’s property or during plaintiff’s work hours, there was insufficient cause to dismiss him because the efficiency of the public service was not impaired. Defendant contends that while plaintiff engaged in the miscon *1251 duct during off-duty hours, the conduct was such that he could no longer command respect from the employees he would supervise, nor could plaintiff enforce defendant’s rule prohibiting use or transfer or drugs.[3]
This case was before the Civil Service Commission twice. In its first opinion, the Civil Service Commission reasoned as follows:
I made a thorough analysis of the jurisprudence on the subject of impairment and found that:
‘An analysis of these cases convinces us that an appointing authority must either show by affirmative evidence that the efficiency of the service was actually impaired, or, alternatively, must present facts from which the trier of fact can readily infer impairment of such service.’
At the time of the incident the Appellant was classified as a Foreman I. Our job specification for that class recognizes that ‘this is supervisory work in directing a small crew of laborers and maintenance workers engaged in performing routine construction and maintenance tasks.’ That is, the essence of the work of the Appellant is supervisory in nature. The appointing authority accused Appellant in their [sic] letter of termination with having dealt with a substance that has been labeled a controlled dangerous substance by the laws of this State. We take notice that organized society has strongly condemned the use and proliferation of drugs among its members and that such use and proliferation has come to be recognized as a very substantial problem by organized society. We find it to be a ready inference that where a state classified employee in a susperviso-ry [sic] position is found to have disregarded the laws dealing with controlled dangerous substances, the supervisory employee’s ability to command adherence from his subordinates to the other laws of society and/or the rules of his employer is significantly impaired. This seems to us even more so where the alleged violation, i.e. the selling of the controlled dangerous substance, was had with a co-employee. We believe that in such a case the effectiveness of the supervisor as a tool of higher management has been significantly impaired, and, consequently, the efficiency of the state service has been impaired. We also believe that depending upon the facts of each case the employee may have forfeited his right to employment in state classified service.
The Civil Service Commission reiterated these viewpoints the second time the case was appealed.
The Louisiana Supreme Court set forth the standards for review of a Civil Service Commission decision in the case of Walters v. Department of Police of New Orleans, 454 So.2d 106, 113-114 (La.1984):
Thus a multifaceted review function is committed to the court in civil service disciplinary cases. In reviewing the commission’s procedural decisions and interpretations of law the court performs its traditional plenary functions of insuring procedural rectitude and reviewing questions of law. Due concern both for the intention of the constitution and for the boundaries between the functions of the commission and of the court, however, demands that a reviewing court exercise other aspects of its review function with more circumspection. In reviewing the commission’s findings of fact, the court should not reverse or modify such a find *1252 ing unless it is clearly wrong or manifestly erroneous. In judging the commission’s exercise of its discretion in determining whether the disciplinary action is based on legal cause and the punishment is commensurate with the infraction, the court should not modify the commission’s order unless it is arbitrary, capricious or characterized by abuse of discretion. (Citations omitted).
Reviewing the actions of the Civil Service Commission in this case in accordance with the standards set forth in Walters, I can not say that the Civil Service Commission abused its discretion in finding that defendant’s disciplinary action was based on legal cause. Although plaintiff’s conduct in selling marijuana did not occur during work hours or on defendant’s premises, the conduct did involve a co-employee on the three occasions where the plaintiff sold marijuana (a violation of both defendant’s rule and a state statute). Because the conduct involved a co-employee, I can not say the Commission erred in inferring that the plaintiff’s ability as a supervisor to “command adherence from his subordinates to the ... rules of his employer is significantly impaired.” For these reasons, plaintiff’s assignment of error has no merit.
The majority in its opinion focuses on whether the plaintiff’s arrest and conviction constitute sufficient legal cause for his termination, citing the case of Brown v. L.H.H.R.A., 346 So.2d 758 (La.App. 1st Cir.1977). Yet, as I have earlier stated, the Commission did not base its decision on the plaintiff’s arrest and conviction, but rather on the plaintiff’s conduct in selling marijuana to a co-employee. Thus, the case at bar differs from the Brown case because in Brown, the employee’s arrest and subsequent incarceration were the reason the employer terminated her.[4]
ASSIGNMENTS OF ERROR NOS. 8 and 5
In Assignment of Error No. 8, plaintiff contends that the Civil Service Commission erred in imposing such a severe penalty as termination. Based on Walters, I must determine whether the Civil Service Commission’s action in terminating plaintiff was “arbitrary, capricious or characterized by abuse of discretion.” I can not say that the termination of plaintiff was arbitrary or capricious or that the termination was not commensurate with the infraction. Plaintiff violated defendant’s rule and a state criminal statute on three occasions and involved a co-employee in the violations. Plaintiff’s assignment of error has no merit.
In Assignment of Error No. 5, plaintiff contends that the Commission erred in failing to reinstate plaintiff to a promoted position. Because I would uphold the action of the Civil Service Commission in its termination of plaintiff, there is no need to discuss whether plaintiff should have been reinstated to a promoted position.
ASSIGNMENTS OF ERROR NOS. 6 and 7
In Assignment of Error No. 6, plaintiff complains that the Commission failed to address his appeals of the Referee’s decisions. In plaintiff’s appeal from the Referee’s decision on February 19, 1987, plaintiff contended that the Referee erred in failing to award plaintiff attorney’s fees and in failing to reinstate plaintiff in a higher position with defendant. In plaintiff’s appeal from the Referee’s decision on July 15, 1987, plaintiff contended that the Referee erred in his findings of fact and in his findings of implied impairment, and also contended that the Civil Service Commission should have investigated the defen *1253 dant because the actions of its members are arbitrary and capricious.
In its first opinion, the Civil Service Commission reversed the Referee’s decision in favor of plaintiff and remanded the case to the Referee, thereby pretermitting for consideration whether plaintiff was entitled to attorney’s fees or to be placed in á promoted position. See Smith v. Department of Health & Human Resources, 461 So.2d 1243 (La.App. 1st Cir.1984), writ denied, 464 So.2d 316 (La.1985). In its second opinion, the Civil Service Commission upheld plaintiff’s termination and the actions of defendant. By its decisions I can conclude that the Civil Service Commission considered plaintiff’s contentions and rejected them. Thus, plaintiff’s contention that the Civil Service Commission failed to address its appeals is without merit.
I note that plaintiff did request attorney’s fees on appeal. Plaintiff’s contention that he is entitled to attorney’s fees rests on the action of this court in reversing or modifying the decision of the Civil Service Commission. Because I would uphold the decision of the Civil Service Commission, I need not address plaintiff’s request for attorney’s fees.
In Assignment of Error No. 7, plaintiff contends that the Commission did not address plaintiff’s request for actions to be taken by the Commission in accordance with La. Const, art. 10, § 10(A)(4) which reads as follows: “(4) Effect. Rules adopted pursuant hereto shall have the effect of law and be published and made available to the public. Each commission may impose penalties for violation of its rules by demotion in or suspension or discharge from position, with attendant loss of pay.” Plaintiff’s sole statement concerning Assignment of Error No. 7 is the following: “As is shown from the entirety of this record, the actions taken by the members of the Caddo Parish Levee Board, were not based upon sufficient legal cause and we would request that appropriate actions be instituted by Your Honors.” I find this assignment of error to be unclear, and therefore, any discussion thereof would be speculative and improper.
For the above and foregoing reasons, I find that the judgment of the Civil Service Commission should be affirmed and therefore I respectfully dissent from the majority opinion.

. Plaintiff argues that the personal knowledge of Sweet and Golden does not extend to the November 2, 1984 transaction wherein plaintiff allegedly sold marijuana to Agent Ashley. Yet I note that Morris testified as to his observation of this transaction on November 2, 1984, from a surveillance position.

. When convicted by the jury of attempted distribution of marijuana in the trial court, the plaintiff was sentenced to pay a fine of $500.00 plus court costs or, in default, serve sixty days in jail, and was additionally given a sentence of two years at hard labor, which was suspended with plaintiff placed on probation for two years. At the time of the hearing before the Referee, plaintiffs conviction had been affirmed by the Second Circuit of Appeal, State v. Caldwell, 493 So.2d 749 (La.App. 2d Cir.1986), and writs were pending in the supreme court.
On April 6, 1987, the supreme court reversed plaintiffs conviction, State v. Caldwell, 504 So.2d 853 (La.1987). The court found that the trial court committed reversible error in excluding the testimony of Alfacgo Braden, a fellow Levee Board employee. The testimony presented by proffer was intended to show "that Sweet’s actions were prompted by orders from the management of the Levee Board, and that Caldwell was entrapped." 504 So.2d at 855.

. Plaintiff and defendant stipulated that plaintiff worked the 8:00 a.m. to 4:30 p.m. shift and that none of the conduct alleged in the termination letter occurred on or near the defendant's property or during plaintiff’s working hours. This stipulation did not cover the new dam area where the alleged drug sale took place on October 26, 1984; however, defendant offered no evidence that this area was owned, leased, used, or controlled by defendant as its working premises.
I do note that Morris did testify that on November 30, 1984, while he was observing plaintiff, he surmised that plaintiff had the marijuana he later sold to Perry Sweet in his car in the parking lot on defendant's premises. Morris said that from the time plaintiff entered his car after leaving work until the time he met with Sweet, he made no other stops during which he could have acquired the marijuana.

. The majority also cites Lombas v. Department of Police, 467 So.2d 1273 (La.App. 4th Cir.), writ denied, 470 So.2d 120 (La.1985), to support its reversal of the Commission's termination of plaintiff. We find Lombas distinguishable from the case at bar. In Lombas, the plaintiff was a police officer who was dismissed from the city police department based on his off-duty participation in an alleged illegal poker game. The Fourth Circuit reversed the Commission’s termination of Lombas, stating that Lombas’ presence at the card game while off-duty did not impair the “efficient operation” of the police department. The case at bar concerned conduct which, while it occurred after work, involved a supervisor selling marijuana to a co-employee on two occasions and selling to a third party in the presence of the co-employee on one occasion.